Please proceed. Good morning, Your Honors, and may it please the Court. My name is Amanda Rice, and I represent the appellant, Penny Goudelock. If possible, I'd like to reserve four minutes of time for rebuttal. Certainly. We'll try to help you. Your Honor, the plain text of the Bankruptcy Code permits only one result in this case. Under that text, a Chapter 13 discharge extinguishes a debtor's personal liability for her debts, a term that is broadly defined and specifically includes contingent and unmatured debts. Counsel, let's assume for a moment that I agree with your construction of the Chapter 13 rules. Your opposition cites the Fourth Circuit case of In rey Rosenfeld and our BAP, you know where our BAP is, and In rey Foster followed a different construction. Why is Rosenfeld and In rey Foster wrong? Well, sort of the fact that Rosenfeld was a 1994 case that came out before Congress amended the Bankruptcy Code to add the A-16 exception for Chapter 7. You know, I think the statutory text is clear without that A-16 exception, but it at least explains how Rosenfeld may have reached that result when it didn't have the extra guidance of that particular provision. And I think that was sort of the original seed that planted this line of cases. I'll say that even in the Fourth Circuit, including in a decision that came down just two weeks ago, district courts are no longer following Rosenfeld for the reason I just gave, that A-16 clarified any ambiguity there may have been at that point. You know, as for Foster, again, I think it's the Rosenfeld line of authority. You know, I'll say I'm not familiar with many other areas of law where courts are so frequently saying things like the text says one thing, but Congress must have made a mistake. What does, within our circuit, what is the precedential value of a BAP opinion? You are not bound by a BAP opinion, Your Honor. So there's no binding effect of that for purposes of this case. You know, do we have to, the way you've set this question before us, do we have to resolve the question as to all condominium association assessments or would our ruling here be fact-specific to this case? I mean, would this affect all post-petition assessments? Yeah, Your Honor, I think the statute is pretty clear and doesn't draw a line between cases, most notably in which the debtor stays in the property and cases in which the debtor surrenders the property. I'll say that you certainly don't have to decide that issue. This is a case where the debtor did everything she could have done, and so in so much as there's different equities in other cases, that's not presented here. We did argue in the alternative that you could adopt the rule that Foster suggested, the sort of you stay, you pay model. I'm not sure there's much statutory support for that, to be honest, but equity is a consideration in bankruptcy. Well, not if it contradicts what the law provides. That is, it may be a consideration in administering the law, but you can't rely on equity you're suggesting to overturn express provision of the law, which is what we're dealing with here. Yeah, Judge Rubino, that's exactly why I think our first-line position is that it doesn't matter. Let me ask you this. At the time that the declaration was executed and all of the documents, there were some in personam rights, which means that you owe a certain amount of money here, and that was the unmature debt. Correct. But there were some in rem rights. Now, what happens to the in rem rights in the Chapter 13? So the same thing that happens with other in rem rights, like mortgages, in rem rights are not affected by bankruptcy. So this would be analogous to a note on a mortgage. In other words, the obligation under the note may be extinguished, but you would then retain the rights under the mortgage and either have a deficiency or a surplusage, and that's the way you would distribute it. Yep, I think that's exactly right. I think mortgage is a good analogy here, and the way the Supreme Court in Johnson talked about sort of the in rem interest, which, as you say, survives bankruptcy, and the in personam liability, which is discharge, is a useful way of thinking about it here. Let me see if I understand this correctly. The way Judge Robreno phrased it is not what I would have understood, so maybe you can clarify this for me. I've always understood that in order for a mortgage to have continued viability, there must be a debt, usually represented by a promissory note. So if you carve off the note and treat that as the debt under a 13 and that is discharged, you may have a problem with, if you will, the mortgage in this case. On the other hand, in this case where you've got CC&Rs, which clearly have an in rem component, and particularly under this statute, the Washington statute, that says you can have either of these things. So you've got a personal debt, an in personam action, and you've got the in rem. Isn't the proper construction that under Washington law, if you're right, the debt of your client can be fully discharged, but the homeowners association has a perfect right under the Washington statute to proceed in rem against whoever happens to own the condo at this point. They can foreclose on the property unless that gets paid. Is that correct? Yes, Your Honor, that's my understanding also. In fact, the association here did seek a stay to go proceed with the foreclosure. In fact, what happened was the lenders paid off all outstanding dues before that happened. That was in the first time. But, I mean, since your client has been charged with this additional debt, if that is treated as being discharged under the Chapter 13, isn't the homeowners association made whole by being able, nevertheless, to foreclose on the property, and if the bank still owns the property or has sold it to somebody else that's been indemnified, then they get paid that way. So basically the homeowners association is made whole either way. Is that a fair statement? I think that's right, Your Honor. I think there may be some circumstances in which a home is underwater and there's more debt on the property. That's always true. But, I mean, saying whatever the value of the property is, the homeowners association can foreclose and get whatever that value might be so that it doesn't leave the homeowners association completely in the lurch. That's correct. And I'd add, too, that in Washington, under the new Condominium Act, which applies to condos founded after 1990, homeowners associations get six months of a super priority lien, which gives them additional protections. So even if the amount that's owed to other lenders exceeds the value of the home. Is the lien of the homeowners association senior to the lien of the mortgagee? So my understanding under Washington law is that, at least for these post-1990 condominiums, six months' worth of outstanding assessments is superior and the rest is not. So in this particular case, when the condo was purchased and the title insurance was issued, was the bank's lien inferior to, in terms of priority, that of the homeowners association under this lien, the homeowners association to foreclose? My understanding is that it was not, that it was inferior, but that the situation would be different with respect to at least those six months for condominiums. But we agree with this one. So if that's the case, then maybe the homeowners association wouldn't have a right because if the- Unless it paid the mortgage, which is unrealistic to do. If the lender has foreclosed, then if it was superior in priority to the homeowners association lien, then the homeowners association lien is gone. It can't foreclose. That's my understanding, Your Honor, that for these older condominiums, if the house is, in fact, underwater and there's more owed on it than the house is worth, there can be situations. And with the associations, in rem obligation itself doesn't end up getting paid off in foreclosure. I'll add, though- That may be the situation here. Rather than the homeowners association being protected, if you will, they're not because a bank has foreclosed on the first lien that they had in this case. So basically they're just not alike. I'll add, Your Honor, though, that another option that the association had, aside from foreclosing back in 2011 when they had permission to do so, is to deal with these ongoing assessments in the bankruptcy plan itself. The association here well knew that these assessments were continuing to accrue, and instead of going to the court to have that accommodated in the reorganization plan, which Ms. Golock paid over the course of four years, they didn't say anything until after this had been resolved. That may go to the equity of the whole thing, of course. But, you know, as I think about what we talked about just a minute ago, it seems strange to me that the bank lien would be able to completely upset the homeowners association, CC&Rs, basically. That's what we're really talking about here. So if the bank forecloses, then that particular unit doesn't have to comply with any of the provisions of the CC&Rs. That doesn't make any sense to me. So are we sure? Do we know which was senior, the bank lien or the homeowners association CC&Rs? You can ask my friend on the other side. I will. My understanding, again, and I'll say that Washington law has changed and does now account for this in the way I described. So that might be an answer to this concern. That's not what we're dealing with. We're dealing with the statute in effect at the time that the bankruptcy was filed. It's true. I mean, I think the statute we're interpreting is the federal bankruptcy code, and state law informs sort of the nature of the liens and the policy implications of how this might play out at a particular time. But the fact that Washington indeed changed its law, I think, goes to show that these kinds of policy considerations are better dealt with by legislatures, either by the federal government could add an exception for this in Chapter 13 like it did in Chapter 7. Do they have the right to establish a super-priority lien under state law that would bind the federal courts and the federal law? Usually super-priority is a function of federal law. Is it not under bankruptcy law? I'm not sure as a general matter, Your Honor. I think here that, in fact, what happens is that the associations get a six-month super-priority lien. The question under federal law that's been the focus of this case is when the debt arises, and I think the association here conceded that that's a federal question, and this court uses the fair contemplation test to determine when a debt arises. And I think here it's just very difficult to say that these regularly occurring assessments were not fairly contemplated. See, I've run into my report. Just ask you this. Your argument is, and I may agree with you, that debtors in Chapter 13 are treated better than debtors in Chapter 7, or for that matter in an 11, which doesn't apply here. Why is that? You know, I think Congress made a determination that debtors and creditors often fare better under Chapter 13 than under Chapter 7. Under Chapter 13, the debtor is making payments, and so there are several sort of carrots that Congress held out to debtors to encourage them to choose Chapter 13. This is one of just 11, of 11, not just 11, categories of debts that are discharged under Chapter 13 and are not discharged under Chapter 7. If it's all right. They wanted to encourage people to elect 13, right? Yes. You say you want to save time? I forgot. I did, indeed, though I'm happy to continue. No, no, please, go ahead. Go ahead and sit, and we'll hear from your opposition here. Good morning, Your Honors. Good morning. May it please the Court, Stephen Smith on behalf of 6001 Association of Apartment Owners. At counsel's table joining me is Brian Fellner. He is counsel for Amicus Community Association Institute. So, Your Honor, time permitting, there are a few topics I'd like to hit, most of which are going to center around policy, which I'll speculate might actually serve. Before we get to that, maybe you can answer my question. In this particular case where the super priority that opposing counsel referred to was not in existence and Ms. Gutelach purchased the condo, was the deed of trust senior to the CC&Rs of the homeowners association in this case? Entirely, Your Honor. Entirely yes, senior? Entirely senior, Your Honor. So when it foreclosed, the CC&Rs no longer applied to that condo unit? Oh, I'm sorry. I thought we were talking with respect to that. So the deed of trust, when a lender forecloses, it completely extinguishes an association's in rem lien rights? It does. It does. And are those carved out from the CC&Rs that are the basis for day-to-day management of the facility? I'm sorry, I'm not trying to understand the question. Okay, let me go back here. I used to practice real estate law, so I'm kind of lost in this stuff here. Homeowners associations have boards. They have to run the place. They have to get the roof fixed. They have to get the lawn mowed. They have to take care of the garage, et cetera, et cetera, et cetera. And homeowners, the owners of the condos can put certain things on there, whatever. There are rules. But part of that group of rules is a lien in most places that says, if you don't do what you're supposed to, we're going to foreclose on your condo. I assume that's what happened here. So my question is, when Ms. Goodelock purchased the condo and she signed for, I guess you call it a mortgage here, not a trust deed, whatever it was, she got a loan, it was secured by a lien on the condo. When you took out the title insurance policy in this case and you looked, what would be senior, the CC&Rs that operate the condo or the deed of trust? So the CC&Rs are superior except basically when they state otherwise or when state law says otherwise. And both of those documents say that a mortgage's seniority for lien priority for foreclosure purposes is superior to the association. So when a lender goes and forecloses, it extinguishes the lien in its entirety. Okay, so as a matter of state law, no matter what the CC&Rs say, any lien that would permit the homeowners association to foreclose is extinguished upon the foreclosure of the deed of trust. Is that right? That's correct, Your Honor. And what Washington laws would you cite to me for that? Sure, RCW 64.34. Do it slowly, please. What is it? RCW 64.34.364 talks about that. 64.34.364. Okay. There's two other provisions. Well, there's just one other provision. RCW 64.32.200 also talks about that as well. And both of those provisions state that an association's lien is superior to all other lien holders except with respect to mortgages and basically property tax. Okay. So in this case, if Ms. Gutelach is successful in getting us to agree that her debt is discharged, the homeowners association is just out of luck for the time period from the date she left the condo until the date that the foreclosure took place and the bank took over. That's correct, Your Honor. And I would turn the Court's attention to the case of In re Beter. Footnote 9 in that case basically talks about how foreclosure is oftentimes an empty remedy or a hollow remedy in circumstances such as this where there's surrender of the property and there's simply In re, which one was it? Beter, B-E-E-T-E-R. I think it's out of Texas. And I have the 175-BR-108. Does it make any difference whether the debtor abandons the property or continues to live in the property? No, Your Honor, it doesn't. Many cases seem to turn on that, the pay and stay rule. Right, and it doesn't. First off, the pay and stay rule I don't think is cited by anything in the bankruptcy code, and state law doesn't support that either. State law, Your Honor, essentially says so long as the debtor holds legal title to the property, they have to continue paying ongoing assessments. And it makes sense, Your Honor, because there are ongoing maintenance obligations and benefits that the debtor continues to receive post-petition, and I would argue even after they move out. And I mentioned in one page of my brief, I think the attractive nuisance example is a really good one where the debtor, sorry, Your Honor. I guess I just want to kind of get back on the main argument here if I can, because isn't it clear that Congress seems chosen to exempt assessments like the one at issue here under this Section 1328B, but not under Section 1328A? So this is the statutory argument that Ms. Goodluck is making. I guess I'd like to know from your perspective, why does Congress's choice to do that not resolve this case, especially in light of the Pennsylvania Department of Public Welfare versus the Davenport case? I have at least three points to that. First, if we take a look at the 1994 House report to the Bankruptcy Reform Act where 523A.16 was first enacted, it starts off with fairness to condominium and cooperative owners, and it only cites the Rostec case. And I think that the court in Foster, that's the Ninth Circuit BAP decision, addressed that. I'm sorry, say that again. It only points to the Rostec case, but then you mentioned Foster. I wanted to make sure I understood what you said. Right. The legislative history refers only to Rostec. The Ninth Circuit BAP in Foster analyzed that a little further and suggested, well, it looks to us like the enactment of 523A.16 was a reaction to a single Chapter 7 case, Rostec, which was holding contrary to what was essentially fair to condominium and homeowners associations to allow for kind of like a bifurcated claim for pre- and post-petition assessments. I think counsel mentioned a new Washington statute that provides, if you will, super priority lien for six months. Was that proposed by the homeowners association groups in Washington? Yeah, it was kind of a meeting of the middle ground. It gets the associations partial recovery, but in this case I think there was a good four-year period between the time that the debtor filed bankruptcy and stopped paying and the lender actually got around to foreclosing. Was it partially an acknowledgment, though, that they weren't going to get paid because of this debt forgiveness under Chapter 13? I'm sorry, could you say that one more time? In other words, did they propose this super priority lien in part because they knew they weren't going to get paid on that in personam debt that might be discharged in a Chapter 13 bankruptcy? To my knowledge, they were not explicitly contemplating bankruptcy in any way. I think it was just, you know, of course people stop paying and of course we don't want a policy where associations are going after individuals for relatively small amounts, so that's my best guess. Why wasn't the homeowners association here more proactive? When Ms. Goodelock left the facility, she wasn't opposing their taking over, or did they just want to have her ride with her previous choice because things were bad in the real estate market and they would not have benefited from foreclosing? I can answer at least part of that since part of that is actually on the record. Okay. The association made efforts to foreclose the property, obtained state relief, and started the foreclosure process, and for reasons unknown to me, the bank came around about a year after she filed and paid everything off in full. So at that point, the association was kind of left scratching its head, what do we do with this ongoing debt that isn't provided for in the plan? And again, this is outside the records, you can tell me to stop talking, but we did make settlement efforts. Okay. So you were going to proceed with two other points, I think, before. Yeah, of course, Your Honor. Thank you. I think acquiescence is actually a decent argument that I made in my brief where all right, fine, we have the 1994 enactment of 523-A-16 to deal with either Rostec or maybe a split of authority throughout the U.S., and it's clear that that split was not dealt with. It became more and more aggressive where courts continued having that issue and that split. So in 2005, BAP-CEPA was enacted. Why didn't Congress take care of it at that point? Why didn't they say, okay, we're going to increase protection to kind of homeowners associations with respect to Chapter 7, and by the way, this is a debt that's normally discharged under a 1328-A context. So I think, and I cited Flood v. Coon on page 46 of my response brief. That's a Supreme Court decision. In my opinion, I think acquiescence might make most sense because the courts were essentially saying, hey, let's look to state law. This is consistent with Butner v. U.S. saying we need to take into account property rights, property interests as defined by state law unless there's some clear or actual conflict with the federal bankruptcy code. And that kind of hits both my points really. Well, take us through your argument of the statutory interpretation argument if you simply read the bankruptcy code that leads you to 523-A, 16 to 1328-A, and you find nothing in 1328 which addresses the Chapter 13 situation. Is it a draftman's error or how do you explain that? Yeah, and I think so many courts have been trying to figure out the answer to that question and been reaching different conclusions. I personally like the rationale in Foster and then its progeny in Ray Batali which is also a Ninth Circuit BAP decision. But I think that… I mean, doesn't the statute, you have to read the plain meaning of the statute, and if you find nothing there, that would be your first stop unless you have some very compelling reasons why we should depart into policy considerations which Congress must have taken into account. So first, the plain reading in the statute doesn't really apply here at all, right, Your Honor? I mean, it just applies to Chapter 7 and 1328-B discharge. And then second, I think we might need to maybe partially set aside traditional rules of statutory construction in light of Butner v. U.S. which again says there needs to be an actual conflict if Congress is going to be eradicating state law property rights. That's specifically the post-petition. So your position is that a debt forgiveness here would be a constitutional takings issue? Is that your argument? I mean, that's one argument that a variety of courts have made. It's an argument that I set forth that… But it's a bankruptcy statute. I mean, this happens all the time. Ask anybody that's ever been in a cram-down. Yep. Why would that have any value at all? And all those cram-down provisions, cash collateral, all those sort of discussions are made explicit in the code. But don't you keep your in-rem rights in any event? That's a great point, Your Honor. So traditional in-rem rights, you know, if we look, I don't remember the name of the Supreme Court case, but they essentially said that the essence of a mortgage is in the bank's ability to foreclose and recover that way. And that's not the case with the community association. That's a remedy that it has. But I spent quite a bit of time in my brief, I think on pages 17 to 24, going through the rich history here, where the distinctive or salient feature of a community association is its right to assess ongoing assessments on whoever happens to own the property. That's its fundamental property right. And this was a particularly great example of why foreclosure rights don't quite get us there and why it shouldn't be analyzed in a mortgage, state law or federal law that deals with mortgages, because we're talking about a different kind of entity, a different creature. But realistically, what happens here? If Ms. Gudulak's debt or in personam debt is discharged, I thought, perhaps I misunderstood you to say, that the homeowners association no longer has a right to foreclose because that has been, if you will, extinguished by the foreclosure of the senior first trustee. Did I misunderstand? That's correct, Your Honor. If that's correct, then the homeowners association in this case basically has no more rights. How can it assess new owners of the condominium itself going forward if that lien has been extinguished? I'm going to apologize, Your Honor, if I misstated the Washington law. It extinguishes the lien up to basically the date of the lender's foreclosure. After that, it's back on. Okay, so once vis-a-vis Ms. Gudulak's departure from the unit, how long after that occurred until the foreclosure of the first trustee, or was that before she left? The lender ended up foreclosing in 2015, which is some four years after she left the property and filed for bankruptcy. So let's just say hypothetically that it had foreclosed contemporaneous, we'll say two months after she left. Are you saying that under Washington law, that lien right of the homeowners association would have been revivified at that two-month mark and would affect any new owner of the unit? Is that correct? Yeah, I think that's a fair... Is it correct, though? Yes, that's correct. Whether it's fair or not. That's correct. So basically a new assessment would be, or a new lien would apply to the new owner of the property moving forward. Okay. Any other questions by my colleague? No. All right, thank you very much, Counselor Uregen. Thank you, Your Honor. We have some rebuttal time here. Thank you, Your Honor. Just a few quick points. I'll start by saying I think Judge Robreno and Judge Merguez, you're right that the plain text here resolves this case. I'm still not sure I've heard any theory of statutory interpretation on the other side here. And I'll say that far from an accident, if you actually read 13A, the exceptions are remarkably specific. It provides for discharge except for those specified in paragraphs 1B, 1C, 2, 3, 4, 5, 8, or 9 of 523A, right? And the association exception is 16. Congress just decided not to add that exception in Chapter 13. And I'll say, too, since my friend on the other side mentioned the legislative history, and this is laid out in the most detail on page 12 of our amicus brief, but Congress specifically said, quote, except to the extent that the debt is non-dischargeable under this section, that is, A16, obligations to pay such fees would be dischargeable. And I think that just answers the question of whether this is a debt and whether it arose before bankruptcy or would have been fairly contemplated before Ms. Goodelock filed her bankruptcy petition. Can I ask you one quick question? Sure. Just following up what the opposing counsel said, do you agree that under Washington law that after the bank foreclosed, that even though the homeowners association lost its lien right up to that point, that those rights are reconstituted at that point so that a new owner, bank or otherwise, would be subject to those lien rights? Correct, and in personam rights as well. And that's under Washington law as well as the declaration itself in this case, which parallels the law by providing for both forms of liability. I know that the law that was in existence at the time of this foreclosure. Correct. If there are no further questions, we ask that you reverse the decision below. Thanks to both counsel for your argument in this very interesting case. The case just argued is submitted.
judges: M. Smith, Murguia, Robreno